94  565
100  676

GEORGE A. PULLEY, Administrator, Appellant, v. THE CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY.

**Railroads:** CONTRIBUTORY NEGLIGENCE. In going to the depot of defendant, deceased crossed at a point not a public street, but commonly used by foot passengers, where there were about fifteen lines of track, and was killed, while so doing, by defendant's engine. At either end of the path where she crossed, the company had sign boards erected, warning the public of the danger and forbidding persons to cross there. A short distance further was a short street leading to the depot, over which but four or five lines of track crossed, and where the danger was comparatively slight, and deceased had ample time to go that way. *Held,* that deceased was negligent.

*Appeal from Page District Court.*—HON. WALTER I. SMITH, Judge.

SATURDAY, MAY 18, 1895.

Plaintiff's intestate was killed on defendant's line of road, and this is an action to recover damages to her estate. The court directed a verdict for the defendant, and the plaintiff appealed.—*Affirmed.*

*C. S. Keenan* and *G. B. Jennings* for appellant.

*Smith McPherson* for appellee.

Granger, J.—Plaintiff's intestate was killed on the defendant's depot grounds at Creston, Iowa, in August, 1891, by one of defendant's engines. The ground upon which the court directed a verdict for the defendant was the contributory negligence of the deceased. The line of defendant's tracks past its depot in Creston is east and west. The depot is on the north side, and south of it are fifteen tracks, all running east and west.

Union street is immediately south of these tracks. In
the neighborhood of the depot are four streets running
north and south, as follows: Elm, Maple, Pine, and
Walnut; and they are located in the order named, Elm
street being at the east. At Elm street there is a pub-
lic crossing for teams and foot passengers, and the
tracks at that point are only four or five in number.
The north end of defendant's passenger platform is on
this street. The other end of the platform is on Pine
street, as the street appears on the north side of the
tracks. Neither Maple, Pine, nor Walnut street
crosses the defendant's line of tracks,—that is, they are
not open for travel across them,—nor does it appear
that they are in fact so established; but each of said
streets is on both sides of the tracks. From Maple street
south of the tracks to the same street north one must
cross the fifteen lines of tracks and the depot platform,
thirty feet in width. At the end of Maple street south
of the tracks, and just at the edge of the depot grounds,
on Union street, is a post eight feet high, with a board
at the top, with the words: "Dangerous. This is no
thoroughfare. People crossing here will be trespass-
ers." On the north side of the tracks, at the end of
Maple street, is a similar sign. On the day of the acci-
dent the deceased, with four others, started from a
house on Walnut street south of the tracks, and went
north to Union street, and then west on Union street.
The deceased was a Mrs. Ludwick. A sister of hers
was to take a train for St. Joseph, Mo., and the party
were going to the train. What is known as the "fast
mail train" from the east had just arrived, and the
engine was to be changed there. The train for St.
Joseph was to leave after the fast mail had gone west.
The engine coming in with the train was disconnected,
and ran west, and switched on to another track, and
then ran back east. As the party were at or near

Maple street, the deceased said to her sister, who was walking with a Mr. Langsdale, one of the party, "I believe that is your train." Mr. Langsdale said: "No, that is not your train. It is not time for your train for half an hour. There is plenty of time. Let us go around by the walk." The sister and Langsdale went on to Elm street, and across to the depot on the walk, while the other three ladies turned in on Maple street; and in crossing the tracks Mrs. Ludwick and another lady were killed by the engine that had been detached from the train, and was backing east on one of the tracks they were crossing. Notwithstanding this situation as to "danger boards" being placed on Maple street, people had been in the habit of crossing to and from the depot for years, both in the day time and night time. It seems to have been a very common practice. These boards had been there for years, and the warning given thereby much disregarded, and because of this travel there seemed to be a path across the tracks from Maple street. There is evidence tending to show negligence on the part of the engineer in backing his engine, in not looking, and in running too fast. Plaintiff attempts to excuse the conduct of his intestate in crossing the track as she did because of the habit of people to cross there, and that, aside from these danger boards, the company had taken no pains to prevent such travel, such as protests or otherwise. So far as a warning to the public was concerned, the company did its duty when it erected the danger boards. It hardly seems possible that a person could cross there in the face of the warning, except with a purpose to take unnecessary chances. The safe way in this case was but a little further, and there was plenty of time. There was really no excuse for making the venture. At the crossing on Elm street there was a flagman,

and the necessary precautions taken for safety in cross-
ing the tracks. The law does not require that, after
this public warning, the company must repeat it by
protests or otherwise. It does not appear that the
company in any way invited travel across the tracks.
It had done enough to put people on guard for their
safety. People going across the tracks were trespass-
ers, and the company owed them no duty to watch
for their presence. This has been repeatedly held by
this and other courts, and is a salutary rule of law.
It appears very conclusively that the deceased, with the
others, rushed upon the tracks without thought or con-
cern for their safety. That there was negligence does
not seem to admit of doubt. The case, by the division
of the party, whereby some pursued the course designed
for such travel and the others a way forbidden, in a
way demonstrates the line between negligence and
diligence. It is seldom that we see so clear a case of
contributory negligence as this. No case to which we
are cited or know of is against the conclusion of the
district court, and its judgment is *affirmed.*